UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GLENN C. MCFARLAND,

    Plaintiff,

    v.

SEARS HOLDINGS MANAGEMENT, et al.,

    Defendants.

_____/

No. C 11-4587 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on February 27, 2013. Plaintiff appeared by his counsel Richard Rogers, and defendant appeared by its counsel Alden J. Parker. Having read the parties' papers (including the supplemental declarations filed after the hearing), and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

## BACKGROUND

This is an age discrimination case, asserting claims under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the California Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12940(a).

Plaintiff Glenn McFarland was originally hired by defendant Orchard Supply Hardware Stores Corporation ("OSH") when he was over 70 years of age. He began working for OSH in June 2003 as a sales associate at the store at Mountain View, California. In 2006, he became the Electrical Department Lead (department supervisor).

During at least the latter part of plaintiff's time as a department lead, he was

supervised, directly and indirectly, by three assistant managers – Rick Himan ("Himan"), Daryl Hirohama ("Hirohama"), and Richard Chow.  Each assistant manager, in turn, reported to the store manager, Steven Hill ("Hill").

The Mountain View store was and remains one of the OSH's highest-volume stores, consistently ranking as one of the five top stores in terms of sales.  The 2008 year-to-date sales ranking for the Electrical Department at the Mountain View store was number three (out of 84 stores).  In January 2009, plaintiff received an award for "Employee of the Month."

Also in January 2009, OSH conducted a labor hour review of all stores in order to address staffing needs given the then-current state of the economy.  According to Jay Keith ("Keith"), who was OSH's director of Human Resources ("HR") at the time of plaintiff's employment, OSH concluded, based on the labor review, that management and department lead staffing needed to be adjusted, and that to accomplish this, a reduction-in-force ("RIF") would be necessary.  Based on the sales volume, OSH determined that the Mountain View store was overstaffed by two department lead positions and one assistant manager position.

In order to implement the RIF, OSH sent a memo to all store managers in February 2009 requesting that they review and rank each of their department leads and assistant managers, based on current and past performance and OSH's organizational values.  The store managers were informed that the evaluations were to be used to identify performance problems, but were not told that rankings would be used in connection with a RIF.  Hill states in his declaration that he had no idea that there would be a RIF, and believed that each store manager was calibrating his team.  Himan and Hirohama also state that they were unaware that a RIF would be conducted.

As instructed by HR, Hill reviewed the performance ratings of his eleven department leads, and rated the leads based on "Organizational Behavior Ratings," "Performance Indicator Ratings," and past performance reviews.  Hill claims that prior to completing the rankings, he had not been informed that OSH had concluded that the Mountain View store

2

was overstaffed by two department leads. He evaluated plaintiff's past and current performance and spoke with the store's assistant managers to get their evaluation of plaintiff's performance.

Both Himan and Hirohama state in their declarations that they considered plaintiff to be a low-performing department lead in comparison to his peers, and that they communicated this to Hill. Hill finally determined that in comparison to the other leads, plaintiff was low-performing, and in fact was the second-lowest rated out of the eleven department leads. Of those ranked higher than plaintiff, a majority were significantly over the age of 40.

Following his evaluation, Hill's rankings were forwarded to HR. HR (specifically, Keith) reviewed Hill's submission and found his assessment to be fair and accurate. Subsequently, HR informed Hill that due to the current economic and retail conditions, OSH would be conducting a statewide RIF and that he would be required to terminate his two lowest-ranking department leads and his lowest-ranking assistant manager. Accordingly, Hill terminated plaintiff's employment in February 2009 pursuant to the statewide RIF.

On April 9, 2009, plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He also filed a charge with the California Department of Fair Employment and Housing ("DFEH"). In the EEOC charge, he alleged that OSH had laid him off on February 26, 2009, and that "[n]o reasons as to why I was being selected for layoff were given to me." He asserted that he believed he had been discriminated against because of his age.

The EEOC issued a Letter of Determination on June 1, 2011, finding that OSH had discriminated against plaintiff because of his age. Nevertheless, the EEOC did not opt to file suit on plaintiff's behalf. Instead, the EEOC issued a right-to sue letter dated September 13, 2011.

Plaintiff filed this action on September 15, 2011, against OSH and its parent company, Sears Holdings Management Corporation ("Sears Holdings"), alleging three causes of action – a claim of discrimination under the ADEA, a claim of discrimination

under FEHA, and a claim of failure to take reasonable steps to prevent age discrimination from occurring, also under FEHA. On May 8, 2012, pursuant to stipulation, Sears Holdings was dismissed from the case.

Defendant OSH now seeks summary judgment as to the ADEA and FEHA discrimination claims.

**DISCUSSION**

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

B.   Defendant's Motion

OSH argues that summary judgment must be granted as to both the ADEA and the FEHA discrimination claims. The ADEA imposes liability for discrimination "because of such individual's age." 29 U.S.C. § 623(a)(1); see Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175-77 (2009) (plaintiff must prove that his age was "but-for" cause of employer's decision to terminate him, not merely one of several reasons for the action). FEHA prohibits employers from discharging or dismissing any employee over 40 years old based on the employee's age. Cal. Gov't Code §§ 12926(b), 12940(a); see Harris v. City of Santa Monica, 56 Cal. 4th 203, 232 (2013) (plaintiff must prove that age discrimination was "substantial factor" in employment decision).

A disparate treatment claim must be supported by direct evidence of discrimination, or may instead be evaluated under the burden-of-proof-and production analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Shelley v. Geren, 666 F.3d 599, 607 (9th Cir. 2012) ("nothing in Gross overruled our cases utilizing [the McDonnell Douglas] framework to decide summary judgment motions in ADEA cases").[1]

Because state and federal laws are similar, California courts look to federal precedent when interpreting FEHA. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000). In particular, courts use the McDonnell Douglas burden-shifting framework and other federal employment law principles when analyzing disparate-treatment claims under FEHA. See Schechner v. KPIX-TV, 686 F.3d 1018, 1023 (9th Cir. 2012); Earl v. Nielsen Media Res., Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

Here, plaintiff has presented no direct evidence of disparate treatment. Thus, under the McDonell Douglas analysis, he can survive summary judgment on his claims only if he first provides sufficient evidence to establish a prima facie case of discrimination. If he succeeds, the burden shifts to OSH to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. If OSH successfully carries that burden, the ultimate burden shifts to plaintiff to raise a triable issue of material fact as to whether the proffered reasons

---

[1] It is only at trial that a plaintiff alleging an ADEA claim is required to prove that age was the "but-for" cause of his termination. Id. at 608.

5

for the adverse action are a mere pretext for unlawful discrimination. See Shelley, 666 F.3d at 607-08. Notwithstanding the burden-shifting, the ultimate burden of proof remains with plaintiff to show that OSH intentionally discriminated against him because of his age. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000).

Here, OSH argues that the court should grant summary judgment because plaintiff cannot establish a prima facie case of age discrimination, and that even if he could, he cannot establish a triable issue with regard to whether OSH's articulated reason for the layoff was pretextual.

To establish a prima facie case of age discrimination, plaintiff must offer either direct or indirect evidence that gives rise to an inference of unlawful discrimination. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996). To establish a prima facie case through circumstantial evidence, he must show that he was a member of the protected class (40 years of age or older); that he suffered an adverse employment action; that at the time of the adverse action he was satisfactorily performing his job; and that he was replaced in that position by a significantly younger person with equal or inferior qualifications, or discharged under circumstances otherwise giving rise to an inference of age discrimination. See Diaz v. Eagle Produce, Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Pottenger v. Potlach Corp., 329 F.3d 740, 745-46 (9th Cir. 2003).

Here, there is no dispute that plaintiff was over the age of 40, and that he was terminated pursuant to the RIF. OSH argues, however, that plaintiff cannot establish a prima facie case because he cannot show that he was satisfactorily performing his job and meeting OSH's legitimate expectations at the time he was terminated, and cannot establish that he was replaced by a significantly younger person with equal or inferior qualifications.

With regard to job performance, OSH argues that the evidence shows that on numerous occasions, plaintiff provided inappropriate or rude responses to customers asking for his help. For example, OSH provides a declaration by Hill, who states that on one occasion, he heard a customer ask plaintiff where a certain item could be found, and

6

plaintiff responded in a rude and inappropriate manner; and a declaration by Plumbing Department Lead Michael Ruiz ("Ruiz"), who states that he witnessed plaintiff becoming frustrated and upset with a customer, and cursing at the customer.

OSH also points to a December 2007 "Documentation of Performance Issues," which was signed by plaintiff. This document notes that plaintiff put his fingers in two customers' faces, swore at them, and then walked away after they asked for his assistance. In September 2008, plaintiff received (and signed) another "Documentation of Performance Issues," also for providing poor customer service, this time to one of OSH's secret shoppers.

Hill, Himan, and Hirohama state in their declarations that as a result of customer complaints, written warnings, and improper behavior, plaintiff's supervisors believed plaintiff could be "short" with customers, and did not meet their expectations or the expectations of OSH with regard to providing proper customer service.

Hill also believed that plaintiff had problems in the area of leadership, as he had conflicts with co-workers, including the associates he supervised in the electrical department. Hill states that on multiple occasions, he found it necessary to have discussions with plaintiff and his subordinates to resolve conflicts among them. In addition, Hill asserts, plaintiff spent a lot of time "organizing" things and typing up lists, when he needed to be more "hands on."

Plaintiff disagrees with the assessment of Hill and the assistant managers regarding his job performance.

Plaintiff argues that his job performance was "excellent." This argument is based primarily on deposition testimony from employees Paula Allen ("Allen") and James McDougall ("McDougall"), whose work he supervised, to the effect that he was a hard worker, treated his subordinates fairly, and was polite and friendly with customers; on plaintiff's receipt of the "Employee of the Month" award in January 2009; and on the fact that the Electrical Department at the Mountain View store was ranked third in sales among all OSH stores in 2008.

7

With regard to the "Employee of the Month" award, plaintiff contends that the award is given for "exceptional" performance, and that he was an "excellent" employee. Based on this evidence, plaintiff contends that the question whether his work performance was satisfactory is disputed.

Hill states, however, that there are various reasons that a particular employee might be named "Employee of the Month." In this case, Hill claims he decided that plaintiff should receive the award because Hill had been working with him to improve his performance, and his performance had in fact improved during the previous month. Although plaintiff was not a top performer, Hill says he wanted to encourage him to continue working to improve.

Plaintiff disputes this account, arguing in his opposition that the fact that he received this award means that his performance was "excellent," and that OSH would never give an employee the "Employee of the Month" award just to encourage the employee to work harder (and that he had never heard of an employee being given the award because he or she needed encouragement).

Plaintiff also provides deposition testimony from Bruce Haynes ("Haynes"), a former Field Human Resources Director, who plaintiff claims testified that the award was a reward for exceptional performance. In actuality, Haynes described the "Employee of the Month" program as a program

> where the management team or sometimes staff would indicate who they felt in the store kind of went above and beyond the call of duty in regards to customer service or other criteria within the store, and they would nominate, and typically the management team or store manager would then select the person as employee of the month.

Haynes added that the nomination process "really did vary from store to store." The only written guideline was "a poster in each store that explained the employee of the month and kind of the criteria around that." Nowhere in the attached deposition excerpts did Haynes state that the award was solely for – or a reward for – "exceptional performance."

Moreover, during his February 12, 2013 deposition, which was taken after plaintiff filed his opposition to OSH's motion, plaintiff testified that he would rate his job performance as either "good" or "very good" – not "excellent." He also conceded that he

8

had no idea what criteria were evaluated to determine which employee would be named "Employee of the Month," and that he had simply "assumed" that the award was given for "exceptional performance and attitude."

With regard to the sales ranking of the Electrical Department at the Mountain View store, while plaintiff concedes that the performance of a particular department cannot be attributed to the efforts of one employee, he again cites to the testimony of Allen and McDougall to the effect that he was an excellent supervisor, was very knowledgeable, and provided good customer service. He also claims that in his work evaluations, he was praised for his service to customers.

Hill contends, however, that the ranking of the Electrical Department at the Mountain View store was significantly impacted by the large commercial sales business (bulk orders from contractors) at that particular store, which in Hill's view was unconnected to plaintiff's abilities as a department head. During the period of plaintiff's employment, commercial sales were managed by the Commercial Services Lead, Dale Arends ("Arends").

Hill explains that most of the commercial sales came from contractors placing bulk orders for electrical and tool products, but those sales were still attributed to those respective departments for purposes of department sales rankings (although the Electrical and Tool Department Leads were not involved in the management or handling of those commercial sales). Thus, OSH contends, while it might appear on the face of it that plaintiff's department was one of the top performing departments in terms of sales, the commercial sales of electrical products significantly contributed to this sales ranking.

In his declaration, plaintiff disputed Hill's suggestion that he (plaintiff) was not responsible for the large volume of commercial sales. Plaintiff asserted that contractors came to his department "because of our knowledge of the product, our excellent service, and because I made certain that we kept enough product on hand." He then added that "[a]fter we had serviced the contractor, we directed him or her to commercial sales" and that he and the employees he supervised "managed and handled everything but the check-out."

Nevertheless, in his February 12, 2013 deposition testimony, plaintiff conceded that he had no knowledge of why any particular contractor came to the electrical department at the Mountain View store, and also testified that it was not true that every contractor that came to the electrical department was completely serviced by electrical department employees and then went to check out – i.e., that he and the employees he supervised managed and handled everything but the check-out procedures.

In addition, McDougal, whom plaintiff supervised, testified in his deposition that he did not recall the Electrical Department making any commercial sales, and indicated that the Commercial Department handled commercial sales entirely. Moreover, both Hill and Kevin Twomey ("Twomey" – another store manager) testified in their depositions that commercial sales are handled directly through commercial services (not another department). As for plaintiff's suggestion that the success of the Electrical Department was due solely to his efforts, both Hill and Twomey testified that the sales increase was affected by the overall increase in the general economy, and that the sales success of a department cannot be attributed to a single individual.

The fourth element of the prima facie case requires plaintiff to show that he was replaced by a significantly younger person with equal or inferior qualifications, or that he was discharged under circumstances otherwise giving rise to an inference of age discrimination. In general, an inference of discrimination can be established by "showing that others not in [plaintiff's] protected class were treated more favorably." Diaz, 521 F.3d at 1207. Where the discharge arises from a RIF, a reasonable inference of age discrimination can arise where the employer had a continuing need for the discharged employee's services in that the discharged employee's duties were still being performed, or where others not in the protected class were treated more favorably. Coleman, 232 F.3d at 1281.

OSH argues that plaintiff cannot meet the fourth element of the prima facie case because he cannot show that he was replaced by significantly younger person with equal or inferior qualifications. OSH contends that the evidence shows that the Electrical

Department Lead position remained vacant for a few months, then was filled by Arends, who was 59 years old at the time, and when Arends retired, by Don McElravy ("McElravy"), who was 63 years old at the time. OSH notes that while both Arends and McElravy were younger than plaintiff (76 at the time of the termination), both were well past the age of 40.

Moreover, OSH notes, both Arends and McElravy had qualifications and experience that equaled or exceeded plaintiff's. Arends was the former Commercial Department Lead, and had worked with numerous plumbers and contractors to obtain bulk order items, including electrical items. He had the same number of years of experience as a department lead as plaintiff did. Arends' 2008 and 2007 performance review scores were each 3.6, and Hill ranked Arends fifth out of eleven department leads. McElravy had approximately seven years' experience as a department lead. His 2008 performance review score was 3.65, and his 2007 score was 3.5. Hill ranked McElravy third out of eleven department leads. By contrast, plaintiff's performance review score from June of 2007 through May of 2008 was 3.0.

In response, plaintiff argues that the person who "replaced" him was substantially younger than 77. And in any event, he asserts, this is not the appropriate measure in a RIF case. Hill prepared a spreadsheet ranking of all the leads, and laid off the bottom two. Plaintiff contends that the appropriate comparison is not between himself and the person who replaced him, but a comparison of the ages of all the other leads – most of whom were substantially younger than plaintiff (who was the oldest lead).

Plaintiff asserts that in Coleman, the Ninth Circuit held that in a RIF case, the plaintiff need not show that he was replaced by a substantially younger employee, and that it is enough that the discharge occurred under circumstances giving rise to an inference of discrimination. Here, he argues, the Electrical Department that he supervised was doing very well, and he had just been honored as "Employee of the Month." And moreover, he was not offered another position. He claims that these facts are sufficient to create an inference of age discrimination.

The Ninth Circuit has repeatedly noted that "[t]he burden of establishing a prima

11

1 facie case of disparate treatment is not onerous." See, e.g., Lyons v. England, 307 F.3d
2 1092, 1112 (9th Cir. 2002) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248,
3 253 (1981)).  On summary judgment, the degree of proof necessary to establish a prima
4 facie case "is minimal and does not even rise to the leval of a preponderance of the
5 evidence." Schechner, 686 F.3d at 1025 (citing Wallis v. J.R. Simplot Co., 26 F.3d 885,
6 889 (9th Cir. 1994)).

7 Under this standard, the court finds that plaintiff has arguably met the requirements
8 for establishing a prima facie case.  With regard to job performance, it appears from the
9 evidence that plaintiff may have been performing his job adequately – but that his
10 performance was determined to be less adequate than that of the other department leads.
11 OSH contends that plaintiff has failed to provide evidence sufficient to show that he was
12 meeting OSH's legitimate expectations at the time of the layoff.  However, this is not a case
13 of termination strictly for performance problems.  Rather, it is a case alleging that OSH's
14 real reason for ranking plaintiff near the bottom of the list of ranked department leads was
15 because of age discrimination.

16 Because neither Allen nor McDougal was involved in the ranking of the department
17 leads, or the decision to terminate plaintiff – or indeed, was in a position to compare
18 plaintiff's job performance with the job performance of other department leads – their
19 opinions regarding plaintiff's job performance are irrelevant.  The only evaluations that are
20 relevant are those of plaintiff's supervisors – Hill, former manager Twomey, and assistant
21 managers Hirohama and Himan.

22 Plaintiff has provided no clear evidence to dispute the fact that at the time of the RIF,
23 Hirohama and Himan both believed that he was not meeting expectations regarding
24 customer service, or to dispute Twomey's and Ruiz's recollections of plaintiff's past history
25 of poor customer service skills; and has conceded that he does not know what criteria were
26 used to determine the recipients of the "Employee of the Month" award, and that he has no
27 evidence that his department handled every aspect of commercial sales of electrical
28 products except the "check-out."  Nevertheless, there is also no evidence that plaintiff

12

would have been terminated for performance problems had it not been for the RIF.

OSH argues that even if plaintiff can establish a prima facie case, it can easily meet its burden of establishing a legitimate, nondiscriminatory reason for plaintiff's termination – the RIF. A RIF may be a legitimate nondiscriminatory reason for laying off an employee. See Coleman, 232 F.3d at 1282. OSH asserts that it was faced with significantly declining economic conditions, which forced it to conduct a RIF, which it did in a rational and nondiscriminatory manner.

OSH asserts that it first conducted a thorough labor review, and concluded that it needed to terminate approximately 241 employees statewide. OSH asked the store managers to rank their employees (department leads and assistant managers), but did not tell the store managers in advance about the planned RIF. Once the evaluations were complete, OSH informed the store managers that they needed to terminate the lowest-ranked employees. At the Mountain View store, that meant terminating two department leads and one assistant manager.

OSH contends that statewide, 52 of the employees affected by the RIF were under the age of 40. While it is true that plaintiff was the oldest employee at the Mountain View store, it is also true that a majority of the department leads who were ranked higher than plaintiff were also significantly over the age of 40.

The court finds that OSH has met its burden of articulating a legitimate, non-discriminatory business reason for plaintiff's termination. Accordingly, the burden shifts back to plaintiff to provide admissible evidence sufficient to create a triable issue as to whether OSH's non-discriminatory explanation is pretext for discrimination.

To meet this burden, plaintiff may offer evidence, direct or circumstantial, "that a discriminatory motive more likely motivated" OSH to terminate him. See Burdine, 450 U.S. at 256. Alternatively, he may offer evidence that OSH's "proffered explanation is unworthy of credence." Id. Nevertheless, he cannot defeat OSH's motion merely by denying the credibility of its proffered reason for the RIF or the termination, or by relying solely on a subjective belief that his termination was unnecessary or unwarranted. See Cornwell v.

Electra Central Credit Union, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006).

Here, plaintiff argues that OSH's articulated reason (its business need to downsize) is "insufficient," because the fact that an employer is free to consolidate or reduce its workforce, and to eliminate positions in the process, does not mean that it can "use the occasion as a convenient opportunity to get rid of its [older] workers." See Guz, 24 Cal. 4th at 35. However, he provides no evidence sufficient to raise a triable issue with regard to whether OSH in fact used the RIF as an opportunity to get rid of its older workers.

Instead, he again points to the fact that he received the "Employee of the Month" award and the fact that the Electrical Department was highly profitable, and argues that this shows that he was performing his job satisfactorily – and suggests that OSH's articulated reason must therefore be pretextual.

Plaintiff also disputes the significance of the rankings performed by Hill, and OSH's claim that no one (including store managers and assistant managers) knew in advance that the rankings were going to be used in the subsequent RIF, on the basis that one of the factors considered was "potential for advancement." He asserts that nobody would consider a 77-year-old as having potential for advancement because of the "obvious" expectation that he would retire in two or three years. He claims that department leads were not rated on current performance, but on future potential, which he argues is "age discrimination." However, he provides no evidence to support these assertions.

With regard to OSH's assertion that the RIF affected approximately 241 employees across California, 52 of whom were under the age of 40, plaintiff responds that these figures are deceptive, because more than 78% of the employees who were laid off were over 40, only 15 of the laid-off employees were under 30, and only 111 were under 50. According to plaintiff, that means that 129 of the 240 laid-off employees were over 50, or 53%. Plaintiff contends that this shows that OSH was "demonstrably" getting rid of older employees – that is, those with the most experience, who worked for higher wages, and who were more likely to suffer industrial injuries.

The court finds that the motion must be GRANTED. While the court has assumed

for the sake argument that plaintiff can establish a prima facie case, it is clear that he does not have evidence sufficient to rebut OSH's legitimate, non-discriminatory business reason for terminating him, or to raise a triable issue as to whether the articulated reason for the termination was a pretext for discrimination.

As an initial matter, plaintiff has provided no authority in support of his claim that OSH's decision to conduct a RIF is an insufficient or a non-legitimate reason for the layoffs. Indeed, courts have held that a layoff pursuant to a RIF can be a sufficient legitimate reason for a defendant to prevail in disposing of a discrimination claim. See Martin v. Lockheed Missiles & Space Co., Inc., 29 Cal. App. 4th 1718, 1733 (1994); Guz, 24 Cal. 4th at 357-58.

As for evidence of pretext, the Ninth Circuit has held numerous times that where there is no direct evidence of discriminatory motive, evidence of pretext must be "specific" and "substantial" in order to create a triable issue as to whether the employer's non-discriminatory explanation is a pretext for discrimination. See, e.g., Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998); see also Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004). In this case, plaintiff has failed to provide "specific" and "substantial" evidence of pretext.

Keith, Hill, Hirohama, and Himan all assert in their declarations that plaintiff's age was not a factor in determining to conduct the RIF, in determining plaintiff's ranking, or in the decision to terminate plaintiff's employment, and plaintiff has no evidence to counter those assertions. In addition, plaintiff has provided no evidence that he should not have been ranked as low as he was, compared to the other department leads.

The statistics cited by plaintiff are not sufficient to create a triable issue as to whether OSH's articulated reason for plaintiff's termination was a pretext for discrimination. To raise a triable issue of fact regarding pretext, statistics "must show a stark pattern of discrimination unexplainable on grounds other than age." Coleman, 232 F.3d at 1283. In addition, statistical analysis must factor in other variables. Pottenger, 329 F.3d at 748. Here, however, while plaintiff's analysis purports to show that more than half of the laid-off

workers were over 50 years of age, he provides no information regarding, for example, the ages of all the employees working at OSH as assistant managers or department leads. If a majority of those workers were over the age of 50, it would not be surprising that a majority of the workers who were laid off were also over the age of 50.

Plaintiff's subjective assumptions regarding how the purpose of the rankings request was interpreted are irrelevant. There is no evidence that the request to the store managers to rank the employees was interpreted as seeking an evaluation of "potential for advancement," or that, as plaintiff claims, "nobody would consider a 77 year old as having potential for advancement."

Moreover, Hill testified that he had no idea why he was being asked to rank his department leads, as that was the first time such a request had been made of him, and that he was not informed that a RIF was in the offing until the evaluations were complete. Based on the evidence presented, the court finds it highly unlikely that OSH, which hired plaintiff when he was more than 70 years old, and promoted him into the position of department lead three years later, would have then terminated him based on his age.

Nor does plaintiff's receipt of the "Employee of the Month" award establish pretext, because plaintiff has provided no evidence to counter Hill's explanation as to why he decided to name plaintiff Employee of the Month. Similarly, the ranking of the Electrical Department does not establish pretext, as it does not establish that plaintiff's job performance was meeting expectations.

Finally, with regard to the EEOC Letter of Determination, the court notes that while a Letter of Determination may be admissible as evidence of discrimination or retaliation, it is not a "free pass through summary judgment." Mondero v. Salt River Project, 400 F.3d 1207, 12125 (9th Cir. 2005).

For example, in Coleman, the Ninth Circuit found that the EEOC letter at issue did not address what facts the EEOC considered and how it analyzed them, and held that when an EEOC letter reports only "bare conclusions," it has little probative value and cannot by itself create a genuine issue of material fact. Id. 232 F.3d at 1284. Here, the

EEOC Determination Letter does not create any genuine issue of material fact, as it contains little detail of the specific facts that led the investigator to conclude that plaintiff had been a victim of age discrimination.

**CONCLUSION**

In accordance with the foregoing, the court finds that defendant's motion for summary judgment as to the first and second causes of action must be GRANTED. To the extent that the court relied on any evidence to which any party has objected, the objections are overruled.

This order does not terminate the case, as there is one cause of action remaining for which OSH did not seek summary judgment – a claim of failure to prevent discrimination, under Cal. Gov't Code § 12940(k). No later than April 5, 2013, OSH shall file a motion for summary adjudication of that issue, not to exceed five pages. Any opposition, also not to exceed five pages, shall be due no later than April 19, 2013. No reply is required, and the court will rule on the papers.

**IT IS SO ORDERED.**

Dated: March 29, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge